UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY A. CARL,

        Plaintiff,

                                    CASE NO. 1:11-CV-94

v.

                                    HON. ROBERT J. JONKER

COUNTY OF MUSKEGON, *et al.*,

        Defendants.

_____/

## ORDER APPROVING AND ADOPTING
## REPORTS AND RECOMMENDATIONS

        The Court has reviewed Magistrate Judge Brenneman's Reports and Recommendations in

this matter (docket ##280, 282, 283, 309, 314) and the parties' Objections and Responses (docket

## 291-294, 297, 300-202, 310, 311, 315, 317, 320-222.).   Under the Federal Rules of Civil

Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he

district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo

reconsideration, he or she finds it justified."  12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE

AND PROCEDURE § 3070.2, at 381 (2d ed. 1997).  Specifically, the Rules provide that:

> The district judge to whom the case is assigned shall make a de novo
> determination upon the record, or after additional evidence, of any
> portion of the magistrate judge's disposition to which specific written
> objection has been made in accordance with this rule.  The district
> judge may accept, reject, or modify the recommended decision,
> receive further evidence, or recommit the matter to the magistrate
> judge with instructions.

FED. R. CIV. P. 72(b).  De novo review in these circumstances requires at least a review of the

evidence before the Magistrate Judge.  *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

Here, each party has objected to almost every recommendation that goes against their position.  For this reason, the Court has reviewed the entire record de novo.  After de novo review, the Court ultimately accepts all of the Reports and Recommendations as well-reasoned and legally sound.  The Court summarizes the background facts in the light most favorable to Plaintiff as the party opposing summary judgment

**Background**

A.      *Mr. Carl is arrested and booked.*

The events giving rise to this case took place over the course of approximately two months in early 2008, while Plaintiff Carl was a pre-trial detainee at the Muskegon County Jail (the "Jail"). Mr. Carl had been employed as a caregiver for an elderly couple, but was arrested on February 23, 2008, after urinating on the elderly woman and attempting to dispense soap from a liquid soap dispenser onto her husband.  (Am. Compl., docket # 27, ¶¶ 22, 25.)  He was booked at the Muskegon County Jail (the "Jail").  (*Id.* at ¶ 26.)  The command lieutenant and administrator of the Jail, Lt. Burns, perceived that Mr. Carl had a serious mental illness, and had the arresting officer take Mr. Carl to the Hackley Hospital emergency room for evaluation.  (*Id.*)  The E.R. attending physician recommended that Mr. Carl be returned to jail and evaluated by Muskegon County Community Mental Health ("CMH").  (*Id.*)  Mr. Carl was returned to jail and released on bond.  Just a few days later, on February 27, 2008, Mr. Carl was re-arrested on felony charges of vulnerable adult abuse based on the incident with the elderly couple, and he  returned to the Jail.  (*Id.* at ¶ 25.)  The booking officer noted in the Inmate Log that Mr. Carl had "severe mental problems." (*Id.*  at ¶ 27.)  The Inmate Log also reflects that the Jail received Mr. Carl's medications.  (*Id.*)

B.      *Mr. Carl's mental health is evaluated.*

A mental health evaluation of Mr. Carl took place on March 3, 2008.  (*Id.* at ¶ 28.)  Jule McLaughlin, a physician's assistant with CMH conducted the evaluation under the supervision of Dr. Zia Khan, a psychiatrist with CMH.  (*Id.*).  Steve Weinert, a limited licensed psychologist with CMH was also present.  (*Id.* at ¶ 29.)  PA McLaughlin observed, among other things, that Mr. Carl was floridly psychotic, unable to join the general population at the Jail, and needed care at a psychiatric facility for his psychosis.  (*Id.* at ¶ 28.)  Mr. Weinert described Mr. Carl as paranoid and "preoccupied with a 'glowing light' in his cell that is tugging at his brain.  (*Id.* at ¶ 29; Jail request for CMH Consultation (March 3, 2008) (docket # 1-4.)  Mr. Weinert recorded his "impression that [Mr. Carl] requires intensive psychiatric treatment that would most appropriately be delivered through admission to the Center for Forensic Psychiatry." (*Id.*)  Upon the order of the trial judge, the Center for Forensic Psychiatry scheduled Mr. Carl for evaluation of competency to stand trial and capacity for criminal responsibility on March 27, 2009.  (Am. Compl., docket # 27,  ¶¶ 42-43.)

On March 5, Katherine Jawar, D.O., an independent contractor retained by CMH, evaluated Mr. Carl to determine whether he should be certified for hospitalization.  (*Id.* at ¶ 31.)  She reviewed PA McLaughlin and Mr. Weinert's notes of their March 3 evaluation and interviewed Mr. Carl.  (*Id.*; CMH Progress Notes (March 5, 2008) (docket # 1-5.))  As to Mr. Carl's mental status, she noted that he "maintained good eye contact with me.  He was pleasant and cooperative.  Speech was non-pressured.  Thought processes were relevant. . . . Cognitive function appears to be intact today." (CMH Progress Notes (March 5, 2008) (docket # 1-5.))  Dr. Jawar noted that she asked Mr. Carl "why there is such a significant change from the interview with the staff yesterday and today[;] he states that he was just messing with them."  (*Id.*)  Dr. Jawar decided against certifying Mr. Carl for a hospital admission.  (*Id.*)

Two days later, on March 7, 2008, Mr. Weinert again evaluated Mr. Carl.  (Am. Compl, docket # 27, ¶ 32.)  Mr. Weinert noted that Mr. Carl had been over-medicated.  (*Id.*)  He recommended that Mr. Weinert be re-evaluated the following Monday, March 10 to determine his readiness to be released into the general population.  (*Id.*; Consultation Note, docket # 214-1.)  However, on March 9, 2008, Lt. Burns authorized Mr. Carl's release into the general population.  (*Id.* at ¶ 38.)  The recommended re-evaluation did not take place.  (*Id.* at ¶ 34.)

       C.       *An alleged assault.*

Mr. Carl contends that he was assaulted one day by Correction Officer (CO) Topp, CO Smith, CO Cerka, CO Darryl Hairston, and Sgt. Todd Gilchrist.[1]  Mr. Carl says that CO Hairston pushed him, and that two of the officers held Mr. Carl down while Sgt. Gilchrist pulled down Mr. Carl's pants and "assault[ed] [his] testicles."  (*Id.* at 61.)  One of the guards knocked Mr. Carl down and held him down with his knee between Mr. Carl's head and neck, causing Mr. Carl shortness of breath.  (*Id.* at 62.)  Then the guards picked Mr. Carl up, put him in a "black restraint chair," and left him there for an hour or more.  (*Id.* at 62-63.)

       D.       *Medication interruptions.*

Lt. Burns and other command sergeants were aware of Mr. Carl's serious mental illness and that Mr. Weinert had recommended that Mr. Carl receive intensive psychiatric treatment, but they did not provide for any psychiatric treatment for Mr. Carl beyond offering him his regular medication.  (Am. Compl., docket # 13. at ¶ 36.)  Mr. Carl often refused to take his medication.  (*Id.* at ¶ 38.)  Lt. Burns ordered that Mr. Carl be held in lock-down until he resumed taking his

---

[1]In his complaint, Mr. Carl alleges that this assault occurred on March 6, 2008.  At the time of his deposition, he could not recall the date the alleged assault occurred.

medication.  (*Id.* at ¶ 41.)  Defendant Christy Bowen,[2] a nurse at the Jail, withheld Mr. Carl's medication after Mr. Carl refused to take his medication on March 18. (*Id.* at ¶ 44.)  Though aware that Mr. Carl was scheduled for a competency and criminal responsibility evaluation on March 27, Nurse Bowen decided to withhold Mr. Carl's medications indefinitely.  (*Id.* at ¶ 48.)  Lt. Burns and the command sergeants knew that Mr. Carl was no longer receiving his medications, and that his competency examination was approaching, but they did not arrange for him to receive further psychiatric treatment. (*Id.*)  Mr. Carl alleges that Sheriff Roesler also knew that Mr. Carl needed psychiatric treatment and disregarded that need.  (*Id.* at ¶ 46.)

On April 11, 2008, the trial judge found Mr. Carl incompetent to stand trial, and he ordered that Mr. Carl be transferred to a state facility for treatment.  (*Id.* at ¶ 50.)  Mr. Carl was transferred to the Center for Forensic Psychiatry on April 18, 2008.  (*Id.* at ¶ 51.)

    E.    *This lawsuit.*

Mr. Carl filed this lawsuit on January 27, 2011.  (Compl., docket # 1.)  Mr. Carl originally alleged claims under both federal and state law.  (*Id.*)  The Court in its discretion declined to exercise supplemental jurisdiction over the state law claims.  (docket # 312.)  Three federal claims, all raised under 42 U.S.C. § 1983, remain in the case.  These claims center on alleged violations of Mr. Carl's rights under the Eighth and Fourteenth Amendments of the Constitution.  Mr. Carl's Count I alleges that Defendants Muskegon County; Muskegon County Sheriff Dean Roesler; Lt. Mark Burns(command lieutenant and administrator of the Jail); Sgt. Brian Bonstell (command sergeant at the Jail); Sgt. Theresa Jones-Burton (command sergeant at the Jail); Sgt. Todd Gilchrist (command

---

[2]Defendant Christy D. Bowen died during the pendency of this litigation.  Leonard Bethke and Brendan Bowen, the Personal Representatives of the Estate of Christy D. Bowen, have been substituted as the decedent's successor in this litigation.  (docket # 306.)

sergeant at the Jail); Nurse Christy Bowen; and Limited Licensed Psychologist Steve Weinert were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.  Mr. Carl's Count II alleges that Defendants Sgt. Brian Bonstell; Sgt. Theresa Jones-Burton; Sheriff Dean Roesler; Sgt. Todd Gilchrist; Lt. Mark Burns; Nurse Christy Bowen, and Muskegon County violated his right to Equal Protection under the Fourteenth Amendment.  Mr. Carl's Count III alleges that Defendants CO Topp; CO Smith; CO Cerka; CO Hairston; and Sgt. Todd Gilchrist  violated Mr. Carl's right to be free from excessive force under the Eighth and Fourteenth Amendments.  All the remaining defendants have moved for summary judgment on all claims against them.

## Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the burden of proving the absence of a genuine issue of material fact and its entitlement to summary judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All facts and inferences are viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## Analysis

1.    *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 439 (1985). "To state an equal protection claim, a party must claim that the government treated similarly situated persons differently." *Braun v. Ann Arbor Charter Township*, 519 F.3d 564, 574 (6th Cir. 2008).

Mr. Carl bases his Equal Protection claim on the premise that he "was denied the medical treatment he urgently required whereas other pretrial detainees and inmates may have been provided with medical treatment if they suffered from equally urgent but non-psychiatric medical conditions." (Am. Compl., docket # 27, at ¶ 73.) The Magistrate Judge correctly notes that Mr. Carl brings his Equal Protection claim under a "class of one" theory. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("When a non-suspect classification is involved, a plaintiff may establish an equal protection claim by showing that similarly situated persons were intentionally treated differently without a rational relationship to a legitimate state purpose."). Mr. Carl cannot proceed on such a theory. The Supreme Court has distinguished *Olech* from cases that involve inherently discretionary decisions involving subjective, individual-specific determinations. *Enquist v. Oregon Dep't of Agriculture*, 533 U.S. 591, 603 (2008); *Shoreline Foundation, Inc. v. City of Muskegon*, No. 1:11-cv-343, slip op. at pp. 8-15 (W.D. Mich. Aug. 17, 2012) (Jonker, J.) (docket # 34). Mr. Carl's case falls within that category. Decision-making about his medical treatment necessarily involved discretionary decision-making based on subjective determinations specific to him. The class of one theory does not apply to Mr. Carl's case.

Accordingly, the Magistrate Judge properly concluded that Defendants Sgt. Brian Bonstell, Sgt. Theresa Jones-Burton, Sheriff Dean Roesler, Sgt. Todd Gilchrist, Lt. Mark Burns, Nurse Christy Bowen, and Muskegon County are entitled to summary judgment in their favor on Mr. Carl's Equal Protection claim.

    2.    *Excessive Force*

Mr. Carl was a pretrial detainee throughout the events giving rise to this case.  "[T]he Due Process clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989. *See Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979) "Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment.").  The Sixth Circuit has not determined whether the same analysis applies to both a claim of excessive force under the Fourteenth Amendment and a claim of excessive force under the Eighth Amendment. *See Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) ("[t]he law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same"); *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("there is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does.")).  In analyzing a claim under the Eighth Amendment, a fact-finder must consider whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quotation omitted).  "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9.  A use of force necessary to restore order does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind," or used

8

"maliciously and sadistically for the very purpose of causing harm." *Id.* at 9-10 (citations omitted). The legal test applied to determine whether conduct violates substantive due process rights under the Fourteenth Amendment is whether the conduct "shocks the conscience." *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

Mr. Carl's excessive force claim arises out of the incident involving Defendants CO Topp; CO Smith, CO Cerka,; CO Hairston, and Sgt. Todd Gilchrist.  According to Mr. Carl's deposition testimony, these officers entered his cell without warning, grabbed him, pulled his pants down, snapped his testicles, pushed him onto a cement floor and held him down with a knee on his neck, and strapped him in a restraint chair for an hour or more.  (Carl dep., docket # 228-1, 59-63.) Defendants' depositions provide a markedly different account of the incident, but all acknowledge that some force was used to subdue Mr. Carl and that Mr. Carl ultimately was placed in a restraint chair.  (Hairston dep., docket # 178-4; Topp dep., docket # 178-5; Cerka dep., docket # 175-4; Smith dep., docket # 172-4; Gilchrist dep., docket # 192-3.)  In light of the contradictory evidence the plaintiff and defendants present concerning the nature and degree of force used, genuine issues as to material facts exist. On this record, Mr. Carl's claim of excessive force cannot be decided as a matter of law.  Accordingly, the Magistrate Judge correctly concluded that Defendants CO Topp; CO Smith, CO Cerka,; CO Hairston, and Sgt. Todd Gilchrist are not entitled to summary judgment on Mr.Carl's excessive force claim.

3.    *Deliberate Indifference*

Under the Eighth Amendment, prison officials may not "unnecessarily and wantonly inflict[] pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones*

*v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (quotation omitted).  Pre-trial detainees are "analogously protected under the Due Process Clause of the Fourteenth Amendment.  *Id.*  A claim under section 1983 asserting constitutional violations based on deliberate indifference to a serious medical need has objective and subjective components.  *Id.*  (quotation omitted).  The objective component requires a serious medical need, which has been defined as a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).  The subjective element requires a showing that the prison official had a sufficiently culpable state of mind.  *Id.* (quotation omitted). A sufficiently culpable state of mind exists when an official acts with deliberate indifference to a serious medical need. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Mere negligence does not amount to deliberate indifference. *Id.*  To show deliberate indifference, a plaintiff must show that the official acted with a state of mind similar to recklessness.  *Id.*  "To prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk."  *Id.*

A.      Dr.  Katherine Jawor

The Magistrate Judge recommends granting Dr. Jawor's motion for summary judgment on the claim for deliberate indifference Mr. Carl asserts against her.  (Report and Recommendation, docket # 280.)  A cause of action against a defendant under section 1983 exists only if that defendant acted under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Whether a doctor treating a prisoner is a state actor depends on the relationship among the State, the doctor, and the prisoner.  *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009).  "In determining

whether a doctor acted under color of state law, the primary factor is the physician's function within the state system, not the precise terms of [her] employment." *Id.* (quotation omitted). Courts use three tests to determine whether the challenged conduct may be attributed to the state. Only one of those tests, the public function test, is at issue here. "The public function test requires that the private [defendant] exercise powers which are traditionally exclusively reserved to the state." *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996).

After carefully considering the record, the Magistrate Judge concluded that Dr. Jawor did not function as a state actor in evaluating Mr. Carl for hospital certification. (Report and Recommendation, docket # 280.) The record reflects that Dr. Jawor was an independent contractor to CMH, which itself was a service provider to the Muskegon County Jail. (Beane dep., docket # 232-1; Jawor Contract, docket # 209-4). Dr. Jawor testified in her deposition and stated in her affidavit that she met with Mr. Carl on March 5, 2008, strictly to evaluate whether he needed hospitalization. (Jawor dep., docket # 209-5; Jawor aff., docket # 215-1.) Mr. Carl argues that Dr. Jawor played a more extensive part in his treatment. He attempts to support this claim by noting that Dr. Jawor checked his medications; used a progress note rather than a standard form for involuntary commitment; was identified as prescribing medication; and used a service billing code Mr. Carl says concerns medication review, not involuntary commitment. (docket # 228 at ¶ 46.) He adds that Mr. Weinert did not speak in his request for evaluation of Mr. Carl or in his interrogatories of limiting the scope of Dr. Jawor's referral to an evaluation for hospital certification. (*Id.*) None of these things contradicts the record evidence showing that Dr. Jawor's role was limited to performing an evaluation to determine whether to certify Mr. Carl for involuntary commitment.

The Magistrate Judge correctly noted that the Sixth Circuit has found that a determination of whether certifying a person for involuntary commitment is a public function is state specific. *Ellison v. Garbarino*, 48 F.3d 192, 195-96 (6th Cir. 1995). It is the plaintiff's burden to establish that the state's history of involuntary commitment shows that an involuntary commitment determination is a public function. *Id.* Mr. Carl has not made any showing that involuntary commitment is a public function in Michigan. Dr. Jawor is not a state actor under the public function test in this case. *See Ellison*, 48 F.3d at 196 (explaining that plaintiff's failure to present analysis of history of involuntary commitment in Tennessee renders the public function test inapplicable). The Court agrees with the Magistrate Judge's conclusion that Dr. Jawor is entitled to summary judgment because she did not function as a state actor as required to support a claim under section 1983.

B.    Command Sergeants Bonstell, Gilchrist, and Jones-Burton

The Magistrate Judge recommends granting summary judgment in favor of Command Sergeants Bonstell, Gilchrest, and Jones-Burton on Mr. Carl's claim for deliberate indifference. The Court agrees. The record indicates that these defendants were aware that Mr. Carl was mentally ill. However, the unrebutted testimony of each of these sergeants also reflects that these defendants relied upon the Jail's medical staff to evaluate and treat the medical conditions of individuals incarcerated at the Jail, including Mr. Carl. (Bonstell dep., docket # 167-2; Gilchrist dep., docket # 192-3; Jones-Burton dep., docket # 182-2.) If an inmate refused medication, officers would typically notify the Jail's medical staff. (Bonstell dep., docket # 157-2.) Similarly, if a corrections officer observed an inmate exhibiting bizarre behavior, he or she would normally notify a command sergeant, who would report the behavior to the medical department. (Gilchrist dep., docket # 192-3.) There is simply no record evidence that Sgt. Bonstell, Sgt. Gilchrist, or Sgt. Burton had the culpable

state of mind required to satisfy the subjective element of deliberate indifference.  There is no evidence that any of these defendants intentionally disregarded an obvious medical problem that could cause Mr. Carl death or serious injury.  The Court agrees with the Magistrate Judge that Defendants Bonstell, Gilchrist, and Jones-Burton are entitled to summary judgment as to Mr. Carl's claim of deliberate indifference.

C.     <u>Nurse Christy Bowen</u>

Mr. Carl alleges that Nurse Bowen "made the decision, without the permission of the prescribing authority, to 'pull' [his] anti-pyschotic medication after he refused them several times, even though she knew that [he] was severely mentally ill and psychotic." (Pl.'s Reply, docket # 227, at 12.)  "After she withdrew his medications, she did not inform the prescribing authority and failed to contact the jail doctor or any mental health professional to help [him]." *Id.* The Magistrate Judge found that genuine issues as to material fact preclude judgment as a matter of law on the claim of deliberate indifference against Nurse Bowen.  (Report and Recommendation, docket # 314.)  The record, including Nurse Bowen's own testimony, supports this conclusion.

Nurse Bowen did not dispute that she "pulled" Mr. Carl's medications after he refused them repeatedly.  She testified that it is customary at the Jail after three refusals to "pull" the medications by taking them off the floor and reporting the refusals to the command sergeant, lieutenant, and CMH.  (Bowen dep., docket # 228-4.)  A CMH evaluation typically ensued.  Nurse Bowen testified that she informed CMH, Mr. Weinert, and Lt. Burns that Mr. Carl was refusing to take his medications.  (*Id.* at 108, 115-18.)  But she did not recall informing CMH or Steve Weinert that she had pulled Mr. Carl's medications.  (*Id.* at 59.)  She acknowledged that Mr. Carl received no further medication at the Jail after he refused medication on March 24, 2008.  (Answer, docket # 3, at ¶ 47.)

13

Mr. Weinert testified that he did not recall any decision to pull Mr. Carl's medications, adding that he would not tolerate such a decision. (Weinert dep., docket # 229-4.) Another nurse at the Jail testified that a decision to pull medications can be made only by the Jail's medical department with the approval of the Jail's physician. (Malenko dep., docket # 230-1.)

It is beyond dispute that Nurse Bowen was aware of Mr. Carl's serious medical condition. Drawing all inferences in the light most favorable to Mr. Carl as the non-moving party, the record reflects that Nurse Bowen pulled Mr. Carl's medications without authorization and without reporting her decision to do so. As a result, Mr. Carl received no medication or other medical treatment from the Jail's medical staff. On this record, a fact-finder could reasonably find the subjective element of the deliberate indifference test satisfied. Accordingly, the Magistrate Judge correctly recommended denial of Nurse Bowen's motion for summary judgment on Mr. Carl's deliberate indifference claim.

> D.     Mr. Weinert

Mr. Carl premises his claim against Mr. Weinert for deliberate indifference primarily on the uncontested fact that Mr. Weinert did not follow up with Mr. Carl on or after Monday, March 10, 2008. There is no dispute that Mr. Weinert was aware of Mr. Carl's serious medical needs. But nothing in the record suggests that Mr. Weinert had a culpable state of mind. Mr. Carl attempts to support his claim by arguing that Mr. Weinert failed to comply with CMH policies and procedures. But Mr. Carl does not explain how any such failure to comply with protocol reflects that Mr. Weinert acted with a state of mind akin to recklessness. *See Jones*, 625 F.3d at 941. The record does not support a finding that the subjective element of the deliberate indifference test exists here. At most, any failure to follow up with Mr. Carl on or after March 10, 2008 amounts to negligence, not

deliberate indifference. Accordingly, the Court agrees with the Magistrate Judge that Mr. Weinert is entitled to summary judgment on Mr. Carl's claim of deliberate indifference.

    E.    <u>Muskegon County</u>

To establish county liability under § 1983, a plaintiff must establish that a constitutional violation caused his or her harm, and that the city was responsible for the violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (citing *Cash v. Hamilton County Dept. of Adult Probation*, 388 F.3d 539, 542-43 (6th Cir. 2004)). Municipal liability for such harms exists only if the implementation of official policies or established customs caused the harm. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring)). To prove an illegal policy or custom, a plaintiff may look to "'(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). The plaintiff must also show "a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the moving force behind the violation." *Id.* (quotations omitted.) It is possible to show that a municipality has "a custom causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Id.* (quotations omitted.)

Mr. Carl's claim against Muskegon County alleges that the Jail, through its policies and practices, is deliberately indifferent to the serious medical needs of mentally ill detainees and other inmates. It is undisputed that one of the practices at the Jail is pulling the medications of inmates

who refuse the medications repeatedly.  The record suggests that this policy resulted in Mr. Carl receiving no medical treatment for his serious medical condition.  The parties otherwise disagree fundamentally about what policies and practices toward the mentally ill actually exist at the Jail.  Mr. Carl has provided evidentiary support, including, among other things, depositions of Jail officials and Jail medical personnel, for his claims that the Jail also has policies of failing to make mental health services available to mentally ill detainees not certified for involuntary commitment; that the sheriff and Jail administrators regularly override medical orders; that decisions regarding medical treatment are left to the discretion of the Jail command; and that the refusal of a mentally ill detainee to take anti-psychotic medications results in his visits being withheld.  (docket # 228)  This is sufficient to create a genuine issue as to material fact regarding whether Muskegon County's policies and practices through the operation of the Jail are deliberately indifferent to the serious medical needs of mentally ill prisoners.  Accordingly, the Magistrate Judge correctly recommended that the Court deny Defendant Muskegon County's motion for summary judgment on Mr. Carl's claim that the County through its policy or practice violated his rights under the Eighth Amendment.  It does not appear that Mr. Carl has attempted to argue that Muskegon County had a policy and practice of deliberate indifference through failure to train, but the record does not support such a claim in any event.  To the extent Mr. Carl frames his constitutional claim against the County in terms of failure to train, the County is entitled to summary judgment on the claim.

    F.    <u>Sheriff Roesler</u>

Mr. Carl raises claims of deliberate indifference against Sheriff Roesler in his official and individual capacities.  The Magistrate Judge correctly recommended that the individual capacity claim against Sheriff Roesler be denied, and summary judgment granted to Sheriff Roesler on that

claim.  There is simply no evidence in the record to support the subjective prong of the deliberate indifference standard as to Sheriff Roesler.  The Magistrate Judge also properly recommended denial of Sheriff Roesler's motion for summary judgment on the deliberate indifference claim against him in his official capacity.[3]  The official capacity claim against the Sheriff is functionally the same as the claim against Muskegon County itself, and the same analysis applies.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

> G.    Lt. Burns

Mr. Carl claims that Lt. Burns was deliberately indifferent to his serious medical needs because did not prevent the medical staff from pulling his medications and because Lt. Burns released him into the general population without an evaluation from CMH concerning his readiness for release.  There is no dispute that Lt. Burns was aware of Mr. Carl's serious medical needs.  The record reflects that Lt. Burns deferred to the medical department on all decisions regarding Mr. Carl's medical care, including the decision to pull Mr. Carl's medications after he refused several times to take them.  There is no basis to conclude that Lt. Burns was deliberately indifferent to Mr. Carl's serious medical needs with respect to decisions regarding his medical care.  Record evidence does, however, support Mr. Carl's claim that Lt. Burns's decision to release Mr. Carl into the general population before receiving clearance from CMH was deliberately indifferent.  There is testimony that mentally ill detainees at the Jail have to be evaluated and cleared by CMH before their release

---

[3]As with the claim against Muskegon County, to the extent Mr. Carl frames his claim in terms of failure to train, Sheriff Roesler is entitled to summary judgment.

into general population. Mr. Weinert's testimony reflects that he planned to conduct such an evaluation on Monday, March 10, and that Lt. Burns preemptively released Mr. Carl into general population before that evaluation occurred. A fact-finder could reasonably view this conduct as deliberately indifferent to Mr. Carl's serious medical needs. Accordingly, the Magistrate Judge correctly concluded that Lt. Burns is not entitled to summary judgment on Mr. Carl's claim that he was deliberately indifferent in releasing Mr. Carl into the general population, and that summary judgment to the extent Mr. Carl raises other claims of deliberate indifference against Lt. Burns is appropriate.

### Conclusion

For all of these reasons, the Court concludes that the Magistrate Judge's Reports and Recommendations (docket ##280, 282, 283, 309, 314) are factually sound and legally correct.

**ACCORDINGLY, IT IS ORDERED** that the Reports and Recommendations of the Magistrate Judge (docket ##280, 282, 283, 309, 314) are approved and adopted as the opinions of the Court.

**IT IS FURTHER ORDERED** that the Motions for Summary Judgment filed by defendants Sgt. Bonstell (docket # 165), Sgt. Jones-Burton (docket # 180), Nurse Bowen (docket # 183), Sheriff Roesler (docket # 186), Sgt. Gilchrist (docket # 190), Lt. Burns (docket # 194), and Muskegon County (docket # 198) are **GRANTED** with respect to Count II (the equal protection violation). Plaintiff's Count II (the equal protection violation) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants Topp, Smith, Cerka, and Hairston' Motions for Summary Judgment (docket ## 168, 171, 174, and 177) are **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant Gilchrist (docket # 190) is **DENIED** with respect to Count III (the excessive force claim).

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant Katherine A. Jawor, D.O. (docket # 208) is **GRANTED**.  Defendant Jawor is **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant Muskegon County (docket # 198) is **GRANTED** as to Plaintiff's claim that the County failed to train its employees and **DENIED** as to Plaintiff's claim that the County adopted policies, customs or practices which were deliberately indifferent to his serious medical needs.

**IT IS FURTHER ORDERED** that Defendant Sheriff Roesler's Motion for Summary Judgment (docket # 186) is **GRANTED** as to Plaintiff's claim that Sheriff Roesler, as an individual, was deliberately indifferent to his serious medical needs.

**IT IS FURTHER ORDERED** that Defendant Sheriff Roesler's Motion for Summary Judgment (docket # 186) is **GRANTED** as to Plaintiff's claim that Sheriff Roesler, in his official capacity, failed to train the Jail's employees, and **DENIED** as to Plaintiff's claim that Sheriff Roesler, in his official capacity, adopted policies, customs, or practices which were deliberately indifferent to his serious medical needs.

**IT IS FURTHER ORDERED** that Defendant Lt. Burns's Motion for Summary Judgment (docket # 194) is **DENIED** as to the claim that Lt. Burns was deliberately indifferent for releasing Plaintiff from the holding cell before Plaintiff was evaluated and cleared by Community Mental Health and **GRANTED** as to all other claims alleged against Lt. Burns in Count I.

19

**IT IS FURTHER ORDERED** that Defendant Sgt. Bonstell's Motion for Summary Judgment (docket # 165) is **GRANTED** as to Plaintiff's claim that he was deliberately indifferent to his serious medical needs.  Defendant Sgt. Bonstell is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Defendant Sgt. Jones-Burton's Motion for Summary Judgment (docket # 180) is **GRANTED** as to Plaintiff's claim that she was deliberately indifferent to his serious medical needs.  Defendant Sgt.  Jones-Burton is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Defendant Sgt. Gilchrist's Motion for Summary Judgment (docket # 190) is **GRANTED** as to Plaintiff's claim that he was deliberately indifferent to his serious medical needs.

**IT IS FURTHER ORDERED** that defendant Nurse Bowen's Motion for Summary Judgment (docket # 183) is **DENIED** as to Plaintiff's claim that she was deliberately indifferent as to his serious medical needs.

**IT IS FURTHER ORDERED** that Defendant Weinert's Motion for Summary Judgment (docket #210) is **GRANTED** as to Plaintiff's claim that he was deliberately indifferent to his serious medical needs.  Defendant Weinert is **DISMISSED** from this case.

In sum, only the following claims remain in the case:

1. The Count I deliberate indifference claim against individual Defendants Lt. Burns and Nurse Bowen, and on a "policy and practice" basis against Muskegon County and Sheriff Roesler in his official capacity;.

2. The Count III excessive force claim against individual Defendants Hairston, Cerka, Topp, Smith, and Gilchrist.

All other federal claims against all parties are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

                                    _____/s/Robert J. Jonker_____
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2013