UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY A. CARL,

        Plaintiff,

Case No. 1:11-cv-94

Hon. Robert J. Jonker

v.

COUNTY OF MUSKEGON,
*et al.*,

        Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff's action includes a claim brought pursuant to 42 U.S.C. § 1983 against defendant Katherine A. Jawor, D.O. In Count I of his complaint, plaintiff alleged that the doctor was deliberately indifferent to his serious medical needs while he was in the custody of the Muskegon County Jail. Dr. Jawor moved for summary judgment on this claim. The Court did not address the merits of the deliberate indifference claim, but granted Dr. Jawor summary judgment on the ground that she was not a state actor subject to § 1983. On appeal, the Sixth Circuit reversed, holding that Dr. Jawor was a state actor for purposes of § 1983 and remanded the matter for further proceedings in this Court. *Carl v. Muskegon County*, 763 F.3d 592 (6th Cir. 2014). In reaching this determination, the Sixth Circuit did not address the merits of plaintiff's deliberate indifference claim against the doctor.

This matter is now before the Court on Dr. Jawor's motion for summary judgment with respect to the deliberate indifference claim, which is set forth in her original "Motion for partial summary judgment as to all plaintiff's claims other than Count 5 (which is addressed in a separate

motion)" (docket no. 208). The Court will also address Dr. Jawor's related "Motion for permission to file brief concerning why plaintiff's deliberate indifference claim is barred by the doctrine of collateral estoppel" (docket no. 362).

### I.  The record on remand and defendant Dr. Jawor's motion to file a brief regarding collateral estoppel

As discussed in a previous order, the Court will address plaintiff's deliberate indifference claim on remand by re-visiting the doctor's previously-filed motion for partial summary judgment (docket no. 208), the doctor's supporting brief (docket no. 209), plaintiff's response (docket no. 227), the doctor's reply (docket no. 259), and the parties' supplemental briefs (docket nos. 359 and 360). *See* Order regarding dispositive motion (docket no. 358). The Court is aware that plaintiff's state law claims against Dr. Jawor were dismissed without prejudice, that some claims were filed in the state court, and that those claims were resolved. Dr. Jawor has raised an issue as to whether the § 1983 claim is collaterally estopped by the resolution of those state court claims. *See Carl v. Muskegon County*, No. 12-48776-CZ (Muskegon County Cir. Court) (Opinion, Sept. 24, 2013) (docket no. 362-2, PageID.5502-5503). However, because the Court can resolve the doctor's motion for summary judgment without addressing the issue of collateral estoppel, defendant's motion for permission to file a brief concerning collateral estoppel (docket no. 362) should be denied.

### II.  Legal standard

#### A.  Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Deliberate indifference claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim,

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

During the relevant time period, plaintiff was in the custody of Muskegon County as a pre-trial detainee. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Thus, "[w]hether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id. See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### III. Discussion

#### A. The Sixth Circuit opinion

The Sixth Circuit summarized the facts of this case as follows:

> Timothy Carl was arrested under bizarre circumstances. While working as an in-home healthcare provider for an elderly couple, Carl experienced a psychotic break, urinating on one client's head and attempting to dispense liquid soap on another's. Muskegon County prosecutors charged Carl with vulnerable-adult abuse, and he was held as a pretrial detainee at the county jail.
>
> The strange nature of Carl's arrest, coupled with his behavior during the inmate-booking process, prompted an evaluation as to whether he presented a danger to himself or others and whether he should be involuntarily hospitalized. Mental health services at the jail were contracted out to an agency established by Muskegon County. That agency, Community Mental Health Services ("CMH"), agreed to "provide mental health [and psychiatric] services to the inmates of the Muskegon County Jail" in its operating agreement.
>
> On March 3, 2008, two CMH employees, Jule McLaughlin and Steve Weinert, examined Carl at the jail. McLaughlin, a physician's assistant, indicated that Carl was "floridly psychotic," that he had considered killing himself, and that he required treatment in a psychiatric facility. McLaughlin had previously prescribed

>Carl an anti-psychotic medication but noted that his current medications were "not very effective."
>
>Weinert's assessment of Carl echoed McLaughlin's conclusions. Weinert, a limited-licensed psychologist at CMH, documented that Carl was "paranoid" because he described a "glowing light in his cell that [was] tugging at his brain." In Weinert's judgment, Carl "require[d] intensive psychiatric treatment" and hospitalization. Unable to certify Carl for involuntary hospitalization himself, Weinert enlisted Dr. Katherine Jawor's assistance to determine whether hospitalization was appropriate.
>
>Dr. Jawor is the focal point of this case. She served as an independent contractor for CMH and examined Carl on March 5. Before interviewing Carl, Dr. Jawor knew that McLaughlin had prescribed an anti-psychotic and that Weinert had documented Carl's paranoid behaviors. But during Dr. Jawor's evaluation, Carl denied feeling depressed, denied suicidal and homicidal ideations, and denied experiencing paranoid delusions and auditory hallucinations. This marked a dramatic change from the delusional state Weinert and McLaughlin reported merely two days before. Dr. Jawor asked Carl about this transformation, and Carl stated that he was just "messing with" Weinert and McLaughlin when they interviewed him. By the end of Dr. Jawor's evaluation, Carl agreed to take his medications, which he had previously refused. In Dr. Jawor's opinion, based on Carl's "pleasant and cooperative" demeanor, he did not meet the criteria for involuntary hospitalization. This was the first and only time Dr. Jawor examined Carl.
>
>Carl argues that, due in part to Dr. Jawor's negative certification, he did not receive the mental health services he needed and that his "uncontrolled psychotic state" worsened, causing serious harm to his mental and physical health while detained at the jail. He filed a complaint under 42 U.S.C. § 1983 in federal district court against Dr. Jawor, Muskegon County, and others, alleging that the defendants disregarded an obvious and excessive risk to his health in violation of his Eighth and Fourteenth Amendment rights. All defendants except Dr. Jawor were dismissed after signing a settlement agreement. The district court held that Dr. Jawor was not a state actor because Carl had not demonstrated that performing an involuntary commitment determination is a public function. In granting summary judgment to Dr. Jawor, the court did not address whether she deprived Carl of a right secured by the Federal Constitution or federal law.

*Carl*, 763 at 594-95.

The only issue before the Sixth Circuit was whether Dr. Jawor, a private psychiatrist, acted under color of state law to be considered a state actor for purposes of § 1983. *Id.* at 595. As

6

discussed, the Sixth Circuit reversed and remanded, finding that the doctor was a state actor. In reaching this result, the Sixth Circuit observed:

> We are sensitive to Dr. Jawor's argument that her involvement in Carl's care was minimal. She lacked a pre-existing relationship with Carl, did not review his medical history before her interview, and provided deposition testimony that neither her supervisor nor anyone else asked her to do anything beyond determining if involuntary hospitalization was warranted. With no intention to treat Carl over an extended period of time, Dr. Jawor did not schedule a follow-up appointment to see if Carl was taking his medication, whether the dosage was too high or low, or if there were adverse side effects associated with his medication. She recognized that a jail physician was on duty at all times and assumed that someone else would assume these responsibilities. We do not address whether Dr. Jawor's role was limited to a one-time evaluation for involuntary commitment. Regardless, these facts speak more directly to whether Dr. Jawor disregarded a risk to Carl's claimed medical needs (i.e., to the merits of his Eighth and Fourteenth Amendment claims); they are of modest value in assessing her status as a state actor.

*Id.* at 597.

### B.    Dr. Jawor's jail visit on March 5, 2008

On February 27, 2008, Jule McLaughlin, P.A.-C prescribed plaintiff a medication called Seroquel, for the purpose of treating plaintiff's mental illness. *See* Prescription (docket no. 215-2, PageID.1802). This prescription was approved by Ms. McLaughlin's supervising psychiatrist, Dr. Zia Khan, and was in effect when Dr. Jawor visited plaintiff on March 5, 2008. *Id.* Plaintiff had received and taken several doses of Seroquel while he was in jail prior to March 5, 2008. Inmate Medication Form (docket no. 219-3, PageID.1885).

Dr. Jawor's progress note from March 5, 2008, reflects that she met with plaintiff from 4:18 p.m. through 4:22 p.m. *See* Progress Note (docket no. 218-4, PageID.1873). Dr. Jawor testified that the purpose of her meeting was to "evaluate the need for hospitalization." Dr. Katherine Jawor Dep. at p. 76 (docket no. 209-5). Dr. Jawor testified that the CMH supervisor asked

7

her to perform this evaluation.  *Id.*   Dr. Jawor repeatedly testified that she was focused on whether plaintiff would meet the standard for involuntary certification to be committed to the hospital (involuntary commitment).  *Id.* at pp. 90-91, 111.  *See id.* at p. 104 ("my role was to see this individual and see if he needed involuntary hospitalization"); p. 112 ("[m]y role was to assess if he needed to be involuntarily hospitalized").[1]

Dr. Jawor testified that plaintiff was the only person she evaluated at the jail in 2008. *Id.* at p. 99.  Although the progress notes reflect otherwise, Dr. Jawor testified that the March 5, 2008 evaluation took 40 to 42 minutes.  *Id.* at p. 106.  Finally, Dr. Jawor stated in her affidavit that "[n]obody has ever asked me to do anything for Mr. Carl beyond evaluating him on March 5, 2008 to determine whether he was certifiable for involuntary hospitalization."  Dr. Katherine Jawor Aff. at ¶ 7 (docket no. 215-1).

Plaintiff contends that Dr. Jawor's role was not limited to certifying plaintiff for involuntary commitment.  In this regard, plaintiff points out:  that Dr. Jawor checked plaintiff's medication; that the doctor used a progress note rather than "a standard involuntary commitment form;"[2] that the doctor was identified as the prescriber; that she used a service billing code of 90862 which plaintiff states is the code for "medication review" and "Pharmacological management;" that Mr. Weinert's request was not limited to an evaluation for involuntary commitment; and Mr.

---

[1] The applicable statute as M.C.L. § 330.1401(1)(a), states that as used in this chapter ["Civil admission and discharge procedures: Mental illness"] a "person requiring treatment" is defined as "[a]n individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation."

[2] Plaintiff does not identify the "involuntary commitment form" which he claims should have been used or the relevant statute.

Weinert's interrogatories did not mention limiting the scope of Dr. Jawor's referral to an evaluation for certification for involuntary commitment. *See* Plaintiff's Appendix at ¶ 46 (docket no. 228).

It is undisputed that while in the custody of the Muskegon County Jail in February and March, 2008, plaintiff was prescribed medication for a mental condition. For this reason, the Court concludes that plaintiff met the objective prong to support his deliberate indifference claim. Nevertheless, plaintiff's deliberate indifference claim fails because he did not meet the subjective prong. When Dr. Jawor evaluated plaintiff on March 5, 2008, the doctor did not observe that a substantial risk of serious harm existed. At that time plaintiff denied feeling depressed; denied suicidal and homicidal ideations; and denied experiencing paranoid delusions and auditory hallucinations. *Carl*, 763 F.3d at 594. When Dr. Jawor visited plaintiff, he exhibited a marked a dramatic change from the delusional state Weinert and McLaughlin reported two days before. *Id.* When Dr. Jawor asked plaintiff about this transformation, plaintiff stated that he was just "messing with" Weinert and McLaughlin when they interviewed him. *Id.* Although plaintiff had previously refused to take his medication, by the end of Dr. Jawor's evaluation, plaintiff agreed to take the medication. *Id.* In Dr. Jawor's opinion, plaintiff did not meet the criteria for involuntary hospitalization. *Id.*

In reaching this determination, the Court is aware of Dr. Stehouwer's assessment that "[r]egardless of whether Dr. Jawor spent four minutes or two hours with Mr. Carl, she was grossly negligent in failing to adequately take into account the clear report and directives of her professional colleagues and to recognize that a psychotic patient can demonstrate waxing and waning of psychotic symptoms." Plaintiff's Supplement (docket no. 360-1, PageID.5394). As discussed, negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.

*Farmer*, 511 U.S. at 835. Here, Dr. Stehouwer opined that Dr. Jawor was not merely negligent, but "grossly negligent."

In evaluating this opinion, the Court looks to Michigan law, which uses the term gross negligence to describe conduct which avoids governmental immunity for employees of governmental agencies. *See* M.C.L. § 691.1407(2)(c) (an employee of a governmental agency is immune from tort liability, provided that the employee's conduct does not amount to gross negligence "that is the proximate cause of the injury or damage"). Under this statute, gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(8)(c). Viewing the evidence in the light most favorable to plaintiff, and assuming that Dr. Jawor's conduct was "grossly negligent" as that term is understood in Michigan, such conduct does not rise to the level of "deliberate indifference" necessary to support an Eighth Amendment claim.

> The Sixth Circuit . . . has determined that the standard for deliberate indifference and the standard for gross negligence are different. This court, in *Schack v. City of Taylor*, 177 Fed.Appx. 469, 471 (6th Cir. 2006), stated "[d]eliberate indifference is akin to criminal recklessness." This court further stated that "[i]t is a very high standard of culpability, exceeding gross negligence." *Ross v. Duggan*, 402 F.3d 575, 590 n. 7 (6th Cir.2004) (quotation omitted). Michigan Comp. Laws § 691.1407(2)(c) defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

*Jones v. Muskegon County*, 625 F.3d 935, 947 (6th Cir. 2010). Because deliberate indifference "is a more stringent standard" than gross negligence, *id.*, Dr. Stehouwer's opinion does not establish a constitutional violation.

Finally, Dr. Hinshaw opined that Dr. Jawor's conduct constituted "abandonment" of plaintiff. *See* Plaintiff's Supplement at PageID.5392-5393. In this regard, Dr. Hinshaw stated:

10

> She was a physician who was part of the Community Mental Health team, a consultant who had a contractual obligation to Community Mental Health to evaluate and treat their patients. As part of that treatment team, she evaluated the patient and participated in decisions about his medication. She was actively involved as a treating physician, and for her not to follow through, either herself or with a knowledge of what other members of the team would do, is abandonment.

*Id.* at PageID.5393.

In short, Dr. Hinshaw concluded that Dr. Jawor "abandoned" plaintiff when she failed to treat him after March 5, 2008. However, Dr. Hinshaw's conclusion does not establish the subjective component of a deliberate indifference claim. To establish this component, plaintiff must show that Dr. Jawor knew of and disregarded an excessive risk to his health or safety. *Farmer*, 511 U.S. at 837. Dr. Jawor addressed the risk to plaintiff's health and safety on March 5, 2008, when she obtained plaintiff's agreement to take the medication prescribed by Jule McLaughlin. At that time, Dr. Jawor was an independent contractor with CMH, was aware that plaintiff was being treated by McLaughlin and Weinert, and examined plaintiff on only one occasion. *See Carl*, 763 F.3d at 594-95. Under these circumstances, plaintiff has failed to demonstrate that Dr. Jawor was deliberately indifferent to plaintiff's serious medical needs.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr. Jawor's motion for partial summary judgment (docket no. 208) be **GRANTED** as to Count I (deliberate indifference), that the doctor's motion to file a brief regarding collateral estoppel (docket no. 362) be **DENIED**, and that this action be **TERMINATED**.

Dated: May 4, 2016              /s/ Ray Kent
                                RAY KENT
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).