<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

No. 16-2302

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

> FILED
> Jun 30, 2017
> DEBORAH S. HUNT, Clerk

| | |
|---|---|
| TIMOTHY A. CARL, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| MUSKEGON COUNTY, et al., | ) THE WESTERN DISTRICT OF |
| | ) MICHIGAN |
| Defendants, | ) |
| and | ) |
| KATHERINE JAWOR, | ) |
| Defendant-Appellee. | ) |

<u>O R D E R</u>

Before: GRIFFIN and DONALD, Circuit Judges; HOOD, District Judge.[*]

Timothy A. Carl, a former Michigan pretrial detainee proceeding through counsel, appeals the district court's judgment dismissing his deliberate-indifference claim brought against Dr. Katherine Jawor pursuant to 42 U.S.C. § 1983. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

As recounted in our previous decision in *Carl v. Muskegon County*, 763 F.3d 592 (6th Cir. 2014) (*Carl I*), "Carl was arrested under bizarre circumstances. While working as an in-home healthcare provider for an elderly couple, Carl experienced a psychotic break, urinating on

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

one client's head and attempting to dispense liquid soap on another's." *Id.* at 594. Carl was charged with vulnerable-adult abuse and held as a pretrial detainee at the Muskegon County Jail from February 26, 2008 until April 18, 2008. "The strange nature of Carl's arrest, coupled with his behavior during the inmate-booking process, prompted an evaluation as to whether he presented a danger to himself or others and whether he should be involuntarily hospitalized." *Id.*

Mental health services at the jail were contracted out to Community Mental Health Services ("CMH"), an agency established by Muskegon County. On February 27, 2008, CMH physician's assistant Jule McLaughlin prescribed an anti-psychotic medication, Seroquel, to Carl. On February 28, 2008, CMH emergency services therapist Joseph Lihan evaluated Carl at the jail. Lihan documented that Carl was paranoid, though not hearing voices, and diagnosed him as psychotic. Lihan also noted that Carl said he would refuse his medication, which Carl believed to be "either a placebo or crack cocaine."

On March 3, 2008, McLaughlin and CMH emergency services therapist Steve Weinert examined Carl at the jail. McLaughlin documented that Carl was "floridly psychotic" and hearing voices, that he felt the lights in the jail were "sucking [his] soul out," and that he had considered killing himself. McLaughlin also indicated that, while Carl had refused his medication for a twenty-four hour period, he had since accepted his medication. McLaughlin concluded that the Seroquel had been ineffective and that Carl required treatment in a psychiatric facility. Weinert's assessment was consistent with that of McLaughlin. Weinert documented that Carl was paranoid, hearing voices, and "preoccupied with a 'glowing light' in his cell that [was] tugging at his brain." Weinert also noted that Carl saw "little reason to take the medication prescribed to him," and that the Seroquel had had "little effect." Weinert concluded that Carl "require[d] intensive psychiatric treatment" and hospitalization. Both McLaughlin and Weinert diagnosed Carl as suffering from paranoid schizophrenia.

Dr. Jawor, an independent contractor for CMH, was subsequently asked to evaluate Carl to determine whether involuntary hospitalization was appropriate. On March 5, 2008, Dr. Jawor examined Carl at the jail. Although Dr. Jawor's consultation note indicated that she examined Carl for only four minutes, she explained in her deposition that this notation was an error, and

that she examined Carl for about forty to forty-two minutes. Before the evaluation, Dr. Jawor knew that McLaughlin had prescribed Seroquel to Carl, and that both McLaughlin and Weinert had documented Carl as floridly psychotic two days before. However, Carl's presentation to Dr. Jawor on March 5, 2008 was dramatically different. During the evaluation, Carl denied feeling depressed, denied suicidal or homicidal ideations, and denied experiencing auditory hallucinations or paranoid delusions. And, although Carl stated he thought he was in jail to get his license, he "maintained good eye contact," "was pleasant and cooperative," and "did not exhibit psychomotor agitation." When Dr. Jawor asked Carl to explain the transformation from his delusional state two days prior, Carl told her that he had been "just messing with" McLaughlin and Weinert. Carl also agreed to take his medication, which Dr. Jawor noted he had previously refused. Based on Carl's presentation, Dr. Jawor concurred with McLaughlin and Weinert's diagnosis of paranoid schizophrenia, but opined that Carl did not meet the criteria for involuntary hospitalization. This was the first and only time that Dr. Jawor evaluated Carl.

In 2011, Carl filed a complaint under § 1983 against Dr. Jawor, Muskegon County, and others, alleging in part that the defendants disregarded an obvious and excessive risk to his health in violation of his Eighth and Fourteenth Amendment rights. Carl alleged that, due in part to Dr. Jawor's negative certification—i.e., her determination that he did not meet the criteria for involuntary hospitalization—he did not receive the mental health services he needed and his condition worsened, causing serious harm to his mental and physical health during his detention at the jail. In 2013, the district court granted Dr. Jawor's motion for partial summary judgment, holding that she was not a state actor for purposes of § 1983. The remaining defendants were dismissed after signing a settlement agreement.

On appeal, we reversed the district court's judgment in favor of Dr. Jawor, finding that attributing Dr. Jawor's conduct to the state was appropriate. We remanded for consideration of whether Dr. Jawor deprived Carl of a right secured by the federal Constitution or federal law. *Carl I*, 763 F.3d at 598.

On May 4, 2016, the magistrate judge filed a report recommending that Dr. Jawor's motion for partial summary judgment be granted, finding that Carl failed to establish the

subjective component of his deliberate-indifference claim.  On August 19, 2016, the district court overruled Carl's timely objections to the report and recommendation, granted Dr. Jawor's motion for partial summary judgment, and dismissed Carl's action.

On appeal, Carl argues that the district court erred in finding that he failed to establish the subjective component of his deliberate-indifference claim.

We review a district court's grant of summary judgment de novo.  *Chapman v. United Auto Workers Local 1005,* 670 F.3d 677, 680 (6th Cir. 2012) (en banc).  A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law[,]' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "At the summary judgment stage, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  *Id.*

"Pre-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).  "A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that 'the defendant[] acted with deliberate indifference to the serious medical needs' of the pre-trial detainee." *Id.* (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001)). Deliberate indifference has both an objective and a subjective component. *Id.* "For the objective component, the detainee must demonstrate 'the existence of a sufficiently serious medical need.'"  *Id.* (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Dr. Jawor does not contest that Carl's mental condition, for which he was prescribed an anti-psychotic medication at the jail, constituted a sufficiently serious medical need.

This case hinges on the subjective component of the deliberate-indifference standard.  To satisfy the subjective component, Carl must show that Dr. Jawor had "a 'sufficiently culpable

state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).  Put otherwise, Carl must demonstrate that Dr. Jawor "subjectively perceived facts from which to infer substantial risk to [Carl], that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  It is not enough that Dr. Jawor "fail[ed] to alleviate a significant risk that [she] should have perceived but did not." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  Where, as here, a detainee "has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The first and only time that Dr. Jawor evaluated Carl was on March 5, 2008, when she interviewed him in order to determine whether he met the criteria for involuntary hospitalization.  At that time, Carl denied feeling depressed, denied suicidal or homicidal ideations, and denied experiencing auditory hallucinations or paranoid delusions.  When Dr. Jawor asked Carl to explain the shift from the delusional state he had presented two days before, Carl told her that he had been "just messing with" McLaughlin and Weinert.  Although Carl stated he thought he was in jail to get his license, he maintained good eye contact, was pleasant and cooperative, and did not exhibit psychomotor agitation.  Moreover, although Carl had previously refused to take the anti-psychotic prescribed to him, he expressed to Dr. Jawor his willingness to take his medication.  Based on Carl's presentation, Dr. Jawor concurred with McLaughlin and Weinert's diagnosis of paranoid schizophrenia and recommended that Carl continue taking his medication.  However, she found that Carl did not meet the criteria for involuntary hospitalization.  At worst, Dr. Jawor's negative certification constituted negligence, which is not actionable under § 1983. *See Farmer*, 511 U.S. at 838.

No. 16-2302
- 6 -

For these reasons, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

_____
Deborah S. Hunt, Clerk

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 30, 2017

Mr. Bradford W. Springer
Scholten Fant
100 N. Third Street
Grand Haven, MI 49417

Mr. Douglas P. Vanden Berge
Rhoades McKee
55 Campau Avenue, N.W.
Suite 300
Grand Rapids, MI 49503

Re: Case No. 16-2302, *Timothy Carl v. Muskegon County, et al*
Originating Case No. : 1:11-cv-00094

Dear Sirs,

The Court issued the enclosed Order today in this case.

Sincerely yours,

s/Jill Colyer
Case Manager
Direct Dial No. 513-564-7024

cc: Mr. Thomas Dorwin

Enclosure

Mandate to issue